95 So.2d 525 (1957)
Geraldine SMITH, Appellant,
v.
The STATE of Florida, Appellee.
Supreme Court of Florida, Special Division A.
May 29, 1957.
Carr & O'Quin and Marshall G. Curran, Jr., Miami, for appellant.
*526 Richard W. Ervin, Atty. Gen., and George R. Georgieff, Asst. Atty. Gen., for appellee.
WELCH, Associate Justice.
The defendant, Geraldine Smith, was indicted by a grand jury in Dade County for the crime of murder in the first degree and was convicted by a jury of the crime of manslaughter; was adjudged guilty and sentenced by the court of Dade County to the State prison for a term of fifteen years. From this judgment and sentence she has taken her appeal to this Court, and poses two questions, as follows:
Question No. One.
"Did the Trial Court err in refusing to allow Counsel for defendant to examine the typewritten manuscript with which the State Attorney attempted to impeach the witness, Richard Boyce?"
Question No. Two.
"Was it error for the Court to send a dictionary to the jury without first informing Counsel for the defendant in open Court?"
Taking up the first question first, we glean from the record that the statement in question was a transcript of the testimony of the witness, Richard Boyce, taken by and before the State Attorney in his office sometime prior to the trial. It appears that this witness, Richard Boyce, had been summoned by the State, but was called and put upon the stand by the defendant, and during the course of the trial this witness was asked on cross-examination with regard to whether he had made certain statements on a previous examination before the State Attorney; the statements allegedly made by the witness related to what he, Richard Boyce, had told the State Attorney concerning the defendant's account of how the homicide occurred. During the course of this cross-examination with regard to the previous statements of the witness the State Attorney referred to certain documents he had in his file, evidently for the purpose of impeaching the witness; defense counsel moved the Court to require the State Attorney to allow an examination of that written document by which the State Attorney was attempting to impeach the defense witness. The motion was denied by the Trial Court; and this action of the Trial Court in denying this motion is the basis for appellant's question number one.
This Court, speaking through Mr. Justice Mabry, in the case of Simmons v. State, reported in 32 Fla. 387, 13 So. 896, 897, said:
"Where a witness does not distinctly admit on cross-examination that he has made a former statement inconsistent with his present evidence, our statute permits such statement to be put in evidence upon proof of the circumstances of the supposed inconsistent statement sufficient to designate the particular occasion, and the witness being asked whether or not he made such statement. Rev.St. Sec. 1102. The general rule that a witness cannot be impeached by proof of inconsistent statement without first laying the proper foundation for the introduction of such evidence, applies to written statements or written testimony of witnesses taken down before a committing magistrate. Such testimony cannot, for the purpose of impeachment, be read to the jury, unless it be produced and shown to the witness, and his attention called to the contradictory statements, in order that he may explain them if he can. Where the testimony of a witness before a committing magistrate has been reduced to writing and signed by him he cannot, of course, be cross-examined as to the contents of this testimony without showing him the evidence or allowing him to hear it read. The rule on this subject has been regarded as settled since the Queen's Case, 2 Brod. & B. 284 * * *."
*527 The State relies on the Whitaker case (Whitaker v. Blackburn, Fla., 74 So.2d 794, 796). This writer is of the opinion that the Whitaker case can be distinguished from the case at bar, because in the Whitaker case the Court was dealing with papers and memoranda of a private and unofficial nature, and in discussing the question in the Whitaker case the Court said:
"* * * Has the court authority to compel counsel, on request of his adversary, to deliver this prepared memoranda for his inspection? Could such a practice of search and seizure be justified by the law for any reasonable rule of procedure? If so, an attorney's private papers and his written data  his private notes made to aid memory on the trial  are no longer safe or sacred, and their possession may be ordered given over to one who has no legal claim to or upon them. Such an order would very much resemble the order under review. We cannot accord to one accused of crime what could not be awarded to the law-abiding citizen in a court of justice." (Emphasis supplied.)
This poses the following question: Was the transcript of the witness' testimony, taken before the State Attorney, a private paper, or memorandum?
We take judicial knowledge of the fact that the State Attorney is a constitutional officer, and an arm of the Court. The State Attorney has the power to subpoena witnesses to appear before him and have them testify before him concerning matters which he is investigating. This is a power that a lawyer in private practice does not have. A witness can be compelled to go before the State Attorney and testify, but he cannot be so compelled to go before and testify before a private attorney. It is not the duty of a State Attorney merely to secure convictions; the State Attorney is required to represent the State, it is his duty to present all of the material facts known to him to the jury; and it is as much his duty to present facts within his knowledge which would be favorable to the defendant as it is to present those facts which are favorable to the State; being an arm of the Court he is charged with the duty of assisting the Court to see that justice is done, and not to assume the role of persecutor. This writer is of the opinion that the testimony of a witness given before a State Attorney (acting in his official capacity as State Attorney, vested by law with the power to compel the attendance of witnesses before him) falls in the same category with testimony taken before a committing magistrate, as mentioned in the Simmons case, supra; therefore, it was error for the Trial Court to allow the State Attorney to use this transcript of the testimony for the purpose of impeaching the witness, Boyce, without allowing the witness and defendant's counsel to inspect the transcript, and if counsel for the defense so desired, to introduce in evidence the whole transcript for the purpose of explaining away, clarifying, or distinguishing the alleged inconsistencies.
The second question raised by the appellant brings here for consideration the propriety of the Trial Judge in furnishing the jury with a dictionary, out of the presence of the defendant and her counsel. The defendant claims this was error.
Section 919.04, Florida Statutes, F.S.A. set out in clear language what a jury may take with them to the jury room, viz., "(1) "Forms of verdict approved by the court, after being first submitted to counsel. (2) Any written instructions given; but if any such instruction is taken or sent all of the instructions shall be taken or sent. (3) All things received in evidence, other than depositions * * *." Section 919.05 prescribes the manner by which the jury may receive additional instructions, and provides, among other things, "Such instruction may be given and such testimony read only after notice to the prosecuting attorney and to counsel for the defendant." *528 (Emphasis supplied.) Section 919.06 prescribes the manner by which the Court of its own motion may recall jurors for additional instructions, or correct any erroneous instruction it has given them. This section also provides "Such additional or corrective instructions may be given only after notice to the prosecuting attorney and to counsel for the defendant. (Emphasis supplied.) This Court, in the case of Johnson v. State, 27 Fla. 245, 247, 9 So. 208, 213, stated,
"They [the jury] must get their instructions as to the law of the case from the court and not from their own perusal of the books." (Emphasis supplied.)
This seems to be the first "Dictionary" case in Florida; but there are several Texas decisions on this point; Corpus Christi St. & Inter-Urban Ry. Co. v. Kjellberg, Tex. Civ.App., 185 S.W. 430, was a case where the Trial Judge allowed a dictionary to be given to the jury without the knowledge or consent of counsel; and the Texas Court, in reversing that case, said that the Statute, Vernon's Ann.Civ.St. art. 2198 (similar to ours) provided for the manner in which the Court could confer with a jury, i.e., in open Court and in the presence of counsel. In another Texas case, Texas Midland Ry. Co. v. Byrd, 102 Tex. 263, 115 S.W. 1163, 1164, 20 L.R.A.,N.S., 429, the Texas Court stated,
"It seems to us, therefore, that it is error for the judge to confer with the jury in any other manner than that prescribed by law, and that if he does, his judgment, on that account, should be reversed."
The Court stated, in the Corpus Christi case [185 S.W. 432],
"What the jury obtained from the stupendous work, filled with inconceivable words and maxisms and aphorisms, no one knows. No book should be consulted by a jury in arriving at a verdict and especially one that defines and treats everything expressed by the English language. No maker of dictionaries should ever be allowed to define legal terms to a jury unless such definitions go through the medium of the trial judge, the only one authorized by law to give definitions and explanations to a jury." (Emphasis supplied.)
In another Texas case, S. Lightburne & Co. v. First Nat. Bank, reported in Tex. Civ.App., 232 S.W. 343, where a jury foreman obtained a dictionary the Court, in holding that such act constituted error, cited the Kjellberg case, supra.
Under our Florida Statute a dictionary is not one of those things permitted to be taken into the jury room; and we therefore hold that it was error to permit the jury to have the use of a dictionary while deliberating its verdict.
For the errors herein pointed out we are of the opinion that this case should be reversed and remanded for a new trial. It is so ordered.
Reversed.
TERRELL, C.J., and ROBERTS and THORNAL, JJ., concur.