894 So.2d 996 (2005)
Curtis Lee WILLIAMSON, Appellant,
v.
STATE of Florida, Appellee.
No. 5D03-2559.
District Court of Appeal of Florida, Fifth District.
January 7, 2005.
Rehearing Denied March 1, 2005.
James S. Purdy, Public Defender, and Leonard R. Ross, Assistant Public Defender, Daytona Beach, for Appellant.
Charles J. Crist, Jr., Attorney General, Tallahassee, and Kellie Nielan and Elizabeth C. King, Assistant Attorneys General, Daytona Beach, for Appellee.
*997 MONACO, J.
Curtis Lee Williamson, who was convicted by a jury of five counts of sexual battery with a deadly weapon or physical force, one count of burglary of a dwelling with an assault or battery, and one count of kidnaping with intent to commit a felony with a weapon, appeals the judgment and sentence imposed on him by the trial court. We affirm. Although Mr. Williamson raises numerous issues on appeal, only one requires exploration. It appears that certain documents that had been marked, but not admitted into evidence, may have been given to the jury during deliberations. Because there was no reasonable possibility that the unauthorized materials had any effect on the jury's verdict, however, we conclude that any error was harmless beyond a reasonable doubt.
The case presented by the State against Mr. Williamson demonstrated that he perpetrated a prolonged sexual attack lasting over six hours on a twenty-five year old female victim. The victim positively identified Mr. Williamson, who lived nearby, as her attacker. The State introduced extensive physical evidence tying Mr. Williamson to the crime, as well as DNA evidence reflecting that he was, indeed, the perpetrator. In addition, the State offered into evidence testimony concerning certain of the appellant's earlier crimes as similar fact evidence pursuant to Williams v. State, 110 So.2d 654 (Fla.1959).[1]See § 90.404(2), Fla. Stat. (2004).
In this connection the fact that Mr. Williamson had pleaded guilty to, and had been convicted of three counts of sexual battery in 1990, was introduced into evidence by the State. He had been released from prison about ten months prior to the attack in the instant case. The victim of the earlier sexual batteries testified about the details in the earlier crimes, and also identified Mr. Williamson as the perpetrator of those attacks. The facts surrounding the 1990 crimes and the crimes for which Mr. Williamson was charged in the present case were quite consistent, and met the requirements for admissibility of section 90.404(2).
After the jury returned its verdict finding Mr. Williamson guilty on all counts, and after the jury was dismissed, the prosecutor brought to the trial judge's attention information that some pieces of evidence marked for identification, but not introduced into evidence, may have been mistakenly taken into the jury room during the jury's deliberations in violation of Rule 3.400, Florida Rules of Criminal Procedure. Apparently, after the courtroom was cleared and the jury dismissed at the conclusion of the trial, the prosecutor went back to collect certain documents and items that had not been admitted into evidence. He suspected for the first time that some of these documents and items might have been sent back to the jury in a box containing documents and physical items that had been received in evidence. When this matter was brought to the trial judge's attention by the prosecutor, Mr. Williamson immediately moved for a mistrial.
The trial court held an evidentiary hearing several weeks later in order to determine how the incident occurred, and precisely what documents or objects, if any, were improperly sent back to the jury. Evidently, no members of the jury were questioned in this regard. The testimony of court personnel who had been tasked with delivering the items that had been *998 received in evidence into the jury room indicated that most of the improper information was contained in tape-sealed opaque envelopes that did not appear to have been opened. Three witnesses testified that the box appeared to be undisturbed by the jury. While a few envelopes in the box were not sealed, the information contained within them was relatively insignificant. One document, however, is of great concern.
Included in the box was a certified copy of the judgment and sentence from the 1990 sexual battery convictions. The prosecutor intended to use the document for finger print comparisons at sentencing, if the need arose. Mr. Williamson acknowledges that the jury heard witnesses regarding the crimes which eventuated in the 1990 convictions, but points out that the jury never received evidence of a conviction for the sexual batteries. The trial judge ultimately denied the motion for mistrial, finding "no reasonable possibility" that the evidence box, if it had been opened, had any effect on the jury's verdict. We are, thus, confronted with the issue of whether the trial court erred in denying the motion for mistrial.
Rule 3.400 describes what a trial judge may send back to a jury retiring for deliberations, including things received in evidence, verdict forms, written instructions and a copy of the charges. The rule does not directly address what cannot be sent back, but the case law sheds some light on this matter.
In State v. Hamilton, 574 So.2d 124 (Fla.1991), the Supreme Court held, first, that when unauthorized materials have been taken into the jury room, the State has the burden of proving that there is no reasonable possibility of prejudice to the defendant. That is to say, the State must demonstrate that the error was harmless. See also Keen v. State, 639 So.2d 597 (Fla.1994). The high court also drew a distinction between unauthorized materials that deal with the facts of the case, and unauthorized materials that deal with the law. For example, where a dictionary was found in a jury room, the court held that a reversal was required because only the trial judge is authorized to give definitions and explanations regarding the law to the jury. See Smith v. State, 95 So.2d 525 (Fla.1957). Similarly, in Yanes v. State, 418 So.2d 1247 (Fla. 4th DCA 1982), the fact that a book of jury instructions was sent to the jury room required a reversal. See also Grissinger v. Griffin, 186 So.2d 58 (Fla. 4th DCA 1966); cf., Wilson v. State, 746 So.2d 1209 (Fla. 5th DCA 1999). When unauthorized matters involving facts have been sent to the jury room, however, the courts have generally applied a harmless error analysis. See, e.g., Ivory v. State, 330 So.2d 853 (Fla. 3d DCA 1976), quashed on other grounds, 351 So.2d 26 (Fla.1977); Beard v. State, 104 So.2d 680 (Fla. 1st DCA 1958). The matter of the 1990 Williamson judgment and sentence falls into this latter category.
Since there is no direct testimony from the jury regarding whether they actually examined Mr. Williamson's earlier judgment and sentence before reaching their verdict, we will presume that they did so. We note, first, that the jury heard the unrebutted Williams rule testimony of the victim of the 1990 crimes concerning the actions of Mr. Williamson in committing those offenses. The reason we do not generally let a jury consider prior offenses is out of fear that the information might improperly persuade the jury that the defendant likely committed the offense for which he or she is currently on trial. See Williams v. State, 749 So.2d 587, 589 (Fla. 5th DCA 2000). In the present case, however, that is not a valid consideration. The jury already had the information underpinning *999 the prior offenses. The fact that the jury might have learned that Mr. Williamson had actually been convicted of the earlier crimes, therefore, does not carry the weight that it normally would.
Moreover, the evidence that Mr. Williamson committed the crimes that are the basis of the present case was overwhelming. In addition to the positive identification of Mr. Williamson as the perpetrator by the victim, as well as the victim of the 1990 crimes, Mr. Williamson was also firmly linked to the instant crimes by fingerprint and DNA evidence. The DNA random match probability that associated Mr. Williamson with the crime was one in 114 trillion of the world population. Finally, there were numerous items of physical evidence pointing to Mr. Williamson's guilt.
There is no question but that error was committed when the 1990 judgment and sentence was delivered to the jury room. We must now consider whether the error was harmless. See § 924.051(7), Fla. Stat. (2004). For the harmless error rule to apply, the State must prove there is no reasonable possibility that the error contributed to the defendant's conviction. See State v. DiGuilio, 491 So.2d 1129 (Fla.1986); Mims v. State, 872 So.2d 453 (Fla. 2d DCA 2004); Williams. After a review of the testimony, documentary and physical evidence, and expert opinions offered in this case, we are convinced that the State demonstrated that the error was harmless beyond a reasonable doubt.
Finally, Mr. Williamson urges that this court's decision in Williams compels a reversal. In Williams, the defendant was charged with a number of offenses, including possession of a firearm by a convicted felon. The defendant had stipulated at trial that he was a convicted felon. Somehow a document describing the nature of the defendant's prior convictions to which he had already stipulated was inadvertently sent to the jury room during deliberations. Three jurors read the exhibit. The jury reported to the trial judge that it was deadlocked, and the judge then read a "dynamite charge" to them. The deadlock was broken, and the defendant was convicted. We reversed out of concerns regarding the harmlessness of the error, and because the Florida Supreme Court had recently held that when a criminal defendant offers to stipulate to the convicted felon element of the crime of possession of a firearm by a convicted felon, the court must accept the stipulation. Williams is readily distinguishable from the present case. First, as noted earlier, we conclude that the error in the case before us was harmless. Second, the jury in Williams knew no details of the felony for which the defendant there was convicted because of the defendant's stipulation. The jury was only aware that he had been convicted of a felony. Here, on the other hand, the prior criminal acts of Mr. Williamson were fully presented to the jury as similar fact evidence.
Accordingly, we find no error in the denial of the mistrial. We have carefully considered the other matters raised by Mr. Williamson, and conclude, as well, that no error was committed.
AFFIRMED.
SAWAYA, C.J., and PETERSON, J., concur.
NOTES
[1] Mr. Williamson also asserts as error the admission of the Williams rule evidence. The similarities between the earlier case and the present case are sufficiently striking to permit their introduction, and we conclude that the trial court committed no error in this regard.